## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Oji Konata Markham,                                Civ. No. 19-3110 (WMW/BRT)

     Petitioner,

v.

                                        **REPORT AND**

Vicki Janssen,                                    **RECOMMENDATION**

     Respondent.

---

Oji Konata Markham, OID# 211943, MCF Rush City, *pro se* Petitioner.

Heather Dawn Pipenhagen, Esq., Dakota County Attorney's Office, and Matthew Frank, Esq., Minnesota Attorney General's Office, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

     Petitioner Oji Konata Markham seeks habeas relief under 28 U.S.C. § 2254. (Doc. No. 1, Habeas Pet.; Doc. No. 2, Mem. of Law.) The Petition asserts nineteen separate grounds for relief. (Habeas Pet. 2–4.) Separately, Petitioner also moves the Court for an evidentiary hearing (Doc. No. 24), and for the Court to expedite consideration of the Petition, compel judgment, and release Petitioner pending the Court's decision. (Doc. No. 26.) For the reasons set forth below, this Court recommends that the Petition, and Petitioner's two motions be denied.

## I.    Background

### A.    State-Court Trial

In the early morning hours of January 22, 2016, O.H. and her friend, S.D., were drinking alcohol at O.H.'s residence. *State v. Markham* (*"Markham I"*), No. A16-1548, 2017 WL 3974466, at *1 (Minn. Ct. App. Sept. 11, 2017). O.H. and Petitioner had previously been in a relationship, but had separated earlier that week. *Id.* Petitioner texted and called O.H. on January 22, 2016, informing her that he was coming to her residence. *Id.* Despite O.H.'s request that he not do so, Petitioner arrived at her residence and knocked on the front door and the bedroom window. *Id.* O.H. then heard someone break through her front door, and Petitioner's voice inside her residence. *Id.* Seeing the broken door, O.H. attempted to flee her residence, but could not do so because once she got outside, she discovered her vehicle's tire was flat. *Id.* She subsequently called 911. *Id.*

A Mendota Heights police officer responded at approximately 3:00 a.m. and met O.H. and S.D. at O.H's residence. *Id.* The officer noted the smell of alcohol, but observed that neither O.H. nor S.D. appeared intoxicated. *Id.* The officer believed O.H. had been crying because her mascara was running and she had a tissue in her hand. *Id.* O.H. had no visible physical injuries, but the officer noted an abrasion on S.D.'s cheek that S.D. would not let him photograph. *Id.* The officer also observed that the front-door frame of O.H.'s residence was damaged, a coffee table appeared displaced, clay pots were broken inside the residence, and the driver's side front tires of both O.H. and S.D.'s vehicles were flat. *Id.*

O.H. told the responding officer that Petitioner had been at her residence when the damage occurred, and that Petitioner had pushed her to the ground, attempted to kick her, and that as a result of these actions, O.H. suffered a bloody nose. *Id.* Petitioner sent O.H. threatening text messages, and attempted to call O.H. multiple times, while O.H. was speaking with the police officer. *Id.* Later that morning, at approximately 11:30 a.m., Petitioner and another person returned to O.H.'s residence, fixed the damage to her door, and replaced her flat tire. *Id.* That evening, O.H. called the responding officer and requested that any charges against Petitioner be dropped. *Id.*

Notwithstanding O.H.'s request, the State of Minnesota charged Petitioner with one count of first-degree burglary with assault in violation of Minn. Stat. § 609.582, subd. 1(c). *Id.* On the third day of Petitioner's jury trial—following consultation with both parties' counsel—the judge permitted the state to amend the complaint to sever the original charge into two counts: burglary with assault-fear against O.H., and burglary with assault-harm against S.D. *Id.* The judge observed that Petitioner could not be convicted of both counts, citing *State v. Beane*, 840 N.W.2d 848 (Minn. Ct. App. 2013), *rev. denied* (Minn. Mar. 18, 2014). *Id.* The jury found Petitioner guilty of burglary with assault-fear against O.H. *Id.*

Following his conviction, Petitioner filed a number of *pro se* motions, all of which were denied by the trial court except the motion seeking to discharge his public defender. *Id.* at *2. The trial court then sentenced Petitioner to 111 months in prison. *Id.*

### B. Direct Appeal

Petitioner appealed his conviction to the Minnesota Court of Appeals. On appeal he argued that (1) the district court committed plain error by allowing the state to amend the complaint during trial; (2) the prosecutor committed misconduct during his closing argument when he misstated the law; (3) the evidence was insufficient to prove that appellant intended to cause O.H. to fear bodily harm or death; and (4) the late disclosure of O.H.'s 911 call required a new trial. *Id.* at *1. Petitioner also filed a supplemental *pro se* brief that advanced six additional arguments: (1) the trial court abused its discretion by admitting a recording of a January 26, 2016 phone call between Petitioner and O.H.; (2) the trial court's jury instruction on first-degree burglary and assault-fear was an abuse of discretion; (3) the prosecutor committed misconduct by eliciting testimony that Petitioner was in custody and by allowing the responding officer and an electronic-crimes-task-force officer to refresh their recollections with written reports during trial; (4) the prosecution introduced improper character evidence; (5) the state failed to disclose O.H.'s past convictions; and (6) Petitioner received ineffective assistance of counsel. *Id.* at *5–7. The court of appeals rejected Petitioner's arguments, and affirmed his conviction. Petitioner petitioned the United States Supreme Court, but was denied certiorari. *See Markham v. Minnesota*, 139 S. Ct. 75, 76 (2018)

### C. Postconviction Appeal

On July 11, 18, and August 8, 2018, Petitioner filed Petitions for Post-Conviction Relief and Amendments to the Petition arguing that he was entitled to post-conviction relief on two grounds: 1) ineffective assistance of his trial counsel for failing to challenge

4

the probable cause for Petitioner's arrest; and 2) newly discovered evidence in the form of Brooklyn Park police reports Petitioner received from his appellate lawyer on February 20, 2018, which, Petitioner argued, indicate there was no probable cause for his arrest. (Doc. No. 15-2, Order and Mem. Denying Post-Conviction Relief A-725.)

The post-conviction court concluded that Petitioner's new claims were barred by *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976.). (*Id.* at A-726–28.) Specifically, the postconviction court reasoned that the claims were procedurally barred because Petitioner had previously raised the same claims on direct appeal, and because they were known or should have been known to Petitioner at the time of his previous appeals. (*Id.* at A-727.) The postconviction court noted that the evidence Petitioner claimed was "newly discovered" was actually discovery produced to Petitioner's trial attorney. (*Id.*) The court concluded that Petitioner's claim that he was only provided the police reports by his appellate counsel on February 20, 2018, was "insufficient to show that Defendant, or Defendant's trial lawyer, did not previously have access to this same information." (*Id.*) Moreover, the postconviction court continued, even if the reports had been new, Petitioner's claim for relief would still be barred because he "previously raised arguments relating to the sufficiency of the probable cause to sustain the charges against him, as well as to sustain the jury's finding of guilty, to both this Court and to the Court of Appeals." (*Id.*)

Petitioner appealed this decision to the Minnesota Court of Appeals arguing that the post-conviction court "abused its discretion because the claims he raised in his postconviction petition were either not barred by *Knaffla* or satisfied the interests-of-

justice exception to *Knaffla*." *See Markham v. State* (*"Markham II"*), No. A18-1831, 2019 WL 3293797, at *1 (Minn. Ct. App. July 22, 2019), *review denied* (Minn. Oct. 29, 2019). Petitioner also asserted ineffective assistance of appellate counsel because the probable cause for his arrest was not challenged on direct appeal, and ineffective assistance of trial counsel. (*Id.* at *3.)

Addressing Petitioner's probable-cause claim, the court of appeals noted that while Petitioner had raised the issue of whether probable cause for his arrest existed on direct appeal, the court of appeals had not addressed that claim in its decision. *Id.* at *2. Accordingly, the court of appeals concluded that the post-conviction court's dismissal of the probable-cause claim as *Knaffla*-barred was in error. *Id.* However, the court of appeals then rejected Petitioner's probable-cause claim on the merits, concluding that Petitioner's arrest was in fact supported by probable cause:

> Markham's arrest was supported by probable cause. The record shows that police officers went to Markham's residence, where he rented a room, and the homeowner invited them inside. After speaking with Markham, the officers arrested him based on eyewitness accounts, a 911 call, and physical evidence collected during the burglary investigation, all of which implicated Markham in the crime. This same information was then used to convict Markham beyond a reasonable doubt of first-degree burglary. We therefore conclude that probable cause existed to support Markham's arrest.

*Id.* The court of appeals also rejected Petitioner's claim for ineffective assistance of appellate counsel, reasoning that she was not required to raise the probable-cause issue because it had already proven meretricious in both pre- and post-trial motions. *Id.* at *3. Finally, the court of appeals held that Petitioner's ineffective-assistance-of-trial-counsel claim was *Knaffla*-barred as it was raised and addressed in Petitioner's direct appeal. *Id.*

## II.    Analysis

Petitioner filed his Petition for Writ of Habeas Corpus on December 18, 2019,

wherein he asserts nineteen separate grounds for this Court's review:

1. The trial court committed plain error by permitting the State to amend the complaint to add a new count of First-Degree Burglary (assault-fear) after the State rested;

2. The prosecutor committed misconduct during closing arguments by stating that Petitioner could be convicted based on intentional acts, rather than specific intent to cause fear;

3. The evidence was insufficient to support a conviction because the State failed to show that Petitioner intended to cause O.H. bodily harm or death;

4. The State deprived Petitioner of a fair trial by failing to disclose O.H.'s 911 calls which differed from her later statements;

5. The trial court abused its discretion by admitting a jail-recorded phone call between Petitioner and O.H. into evidence because Petitioner never had the chance to cross-examine the person on the recording;

6. The trial court abused its discretion by instructing the jury on First Degree Burglary (assault-fear);

7. The prosecutor committed misconduct by eliciting testimony that Petitioner was in custody;

8. The prosecutor committed misconduct by permitting two witnesses to refresh their recollection with written reports during trial because the police report was not admitted as evidence at trial;

9. The State erred by presenting improper character evidence in the phone call between Petitioner and O.H. seeking to show that Petitioner was bullying and controlling;

10. The State failed to disclose evidence of O.H.'s past convictions for "crimes of dishonesty";

11. Petitioner received ineffective assistance of counsel because his trial counsel failed to investigate O.H.'s criminal record;

12. Petitioner received ineffective assistance of counsel because his trial counsel failed to object to a disc containing police reports that the court received without "proper transcripts";

13. Petitioner received ineffective assistance of appellate counsel because his counsel failed to raise probable-cause and ineffective-assistance-of-trial-counsel (for failure to object) claims;

14. The State failed to disclose the Brooklyn Park Police Department's "arresting officer's" and "original report," constituting a *Brady* violation;

15. Petitioner was arrested on January 22, 2016, without a warrant or exigent circumstance justifying a warrantless arrest;

16. The State violated Petitioner's due-process rights by withholding the Brooklyn Park Police Department's "original report";

17. The State failed to subpoena the arresting officer at trial, thus violating Petitioner's due-process rights;

18. The Minnesota Court of Appeals erred in its ruling on the "non-time stamped or non-bate stamped 911 transcripts," constituting an ongoing *Brady* violation because Petitioner does not have the accurate or original time-stamped 911 transcripts and data in his possession pursuant to Fed. R. Crim. P. 16; and

19. "The Minnesota Court of Appeals error in the decision filed September 11, 2017 by ruling on 'Portion' of O.H.'s late disclosure 911 calls, which makes the transcripts 'Material' by the Court ruling on 'Portion' of the late disclosure and Newly Discovered Evidence was not filed with the court and is outside the record under Minn. R. Crim. P. 28.02, subd. 8."

(Habeas Pet. 10–41.) Petitioner also filed a separate Memorandum of Law in support of his Petition. (Doc. No. 2, Pet.'s Mem. of Law.) The Government filed its Answer and supporting memorandum on February 13, 2020 (Doc. Nos. 13, 14), and Petitioner filed a Reply on March 13, 2020. (Doc. No. 18.) For the reasons that follow, this Court recommends that the Petition for Writ of Habeas Corpus be denied.

## A. Defaulted Claims

As a preliminary matter, this Court first addresses the question of whether any of Petitioner's present claims are procedurally defaulted. Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *see also O'Sullivan v. Boerckel*, 535 U.S. 838, 845 (1999). A petitioner meets the "fair presentation" requirement if the state court "rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). "If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006). In other words, the exhaustion requirement is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law"; but "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (citing *Teague v. Lane*, 489 U.S. 288 (1989) and *Wainright v. Sykes*, 433 U.S. 72 (1977)).

Under Minnesota law, one such procedural rule that may result in procedural default is known as the *Knaffla* rule. In *Knaffla*, the Minnesota Supreme Court explained that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). This "longstanding procedural bar . . . prevents state prisoners from seeking postconviction relief based on claims that could have been raised on direct appeal, either because the prisoner knew or should have known of the claims at that time." *Vann v. Smith*, No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015).

Here, Petitioner did not raise the claims asserted in grounds 12, 17, 18, 19, and that part of ground 13 concerning his appellate counsel's failure to pursue an ineffective-assistance-of-trial-counsel claim, in either his direct or post-conviction appeals. (*See* Doc. No. 15, Addendum A-431–89; A-517–35; A-551–75; A–629–81; A–730–91; A-815–61.) It follows that those claims are therefore subject to procedural default. Petitioner disputes this, asserting that he exhausted all his claims (*See* Reply 1–4.) While Petitioner does not provide specific arguments as to why these claims are not procedurally defaulted, this Court observes that exceptions do exist:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Neither of those exceptions apply to the present case. First, Petitioner makes no effort at all to explain why he failed to raise his defaulted claims in his direct appeal or postconviction appeal. Petitioner offers no reason that he could not have been reasonably expected to bring these claims earlier in state court, and accordingly this Court finds there is no adequate cause for his default. "Even if a federal habeas petitioner cannot show cause and prejudice, he may still be entitled to have his successive or abusive claims heard on their merits if he can show that failure to do so would result in a fundamental miscarriage of justice." *Washington v. Delo*, 51 F.3d 756, 760 (8th Cir. 1995). But "[t]his is a narrow exception . . . reserved for extraordinary circumstances and explicitly tied to a petitioner's actual innocence." *Id.* at 760–61. Here, Petitioner has not come close to establishing his actual innocence of the offense for which he was convicted; indeed, as discussed below, the evidence of Petitioner's guilt was substantial. Despite his arguments concerning the alleged weakness of the state's case against him, Petitioner has done little to call that evidence into question.

No exception to the requirement of fair presentation of claims applies to Petitioner's habeas petition. Therefore, this Court finds that grounds 12, 17, 18, 19, and the part of ground 13 described above are properly subject to the *Knaffla* bar and should be dismissed as procedurally defaulted. This Court now proceeds to the merits of those claims that were fairly presented to the Minnesota courts (Petitioner's grounds 1–11, the exhausted portion of ground 13, and grounds 14–16).

### B. Petitioner's Remaining Claims

### i. Standard of Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show

that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

### ii.    Petitioner's Ground One: Amendment of the Complaint

Petitioner argues that the trial court committed plain error by allowing the State to amend the complaint to add a new count of First-Degree Burglary (assault-fear) after the State rested. (Habeas Pet. 10–11.) Petitioner asserts that in so doing, the trial court violated his rights under Fifth, Sixth, and Fourteenth Amendments. (Pet.'s Mem. in Supp. 8.) But Petitioner never presented these constitutional arguments to the state court in his direct appeal. Instead, he relied upon Minn. R. Crim. P. 17.05, which concerns the trial court's discretion to permit amendments to the complaint prior to a verdict. (*See* Addendum A-448–52); *see Markham I*, 2017 WL 3974466, at *2. Accordingly, this Court finds that by failing to raise the alleged violations of his rights under the Fifth, Sixth, and Fourteenth Amendments on direct appeal, Petitioner did not give the state

courts an opportunity to consider the issue as a question of federal law. Because Petitioner is now barred from bringing this claim in state court by the *Knaffla* rule, the claim is therefore procedurally defaulted.

Even were this not the case, however, Petitioner has failed to show that the amendment of the charging document prejudiced him in any way. As the court of appeals observed, "[t]here was no error because the amendment did not allege an additional or different charge." *Id*. The original complaint referred to assault, which includes both "an act done with intent to cause fear in another of immediate bodily harm or death" and "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. 609.02, subd. 10. Thus, the trial court's decision to permit the state to amend the complaint to sever the original charge into two counts: burglary with assault-fear against O.H., and burglary with assault-harm against S.D., did not in any way expand the charges against Petitioner. If anything, it required the jury to convict on more—not less—specific grounds, and as the trial court observed, there was no risk that Petitioner could be convicted of both new counts "because the same course of conduct can only be used to convict [Petitioner] of one [burglary] offense." (Addendum A-330.) Accordingly, this Court recommends that Petitioner's first ground for relief be denied.

### iii.    Petitioner's Grounds 2, 7, and 8: Prosecutorial Misconduct

In grounds 2, 7, and 8, Petitioner alleges prosecutorial misconduct. Specifically, Petitioner alleges that the prosecutor committed misconduct by (1) stating that he could be convicted for intentional acts rather than specific intent to cause fear; (2) eliciting testimony that Petitioner was in custody; and (3) permitting witnesses to refresh their

recollection with written reports during trial when those reports were not admitted into evidence. (Habeas Pet. 12–13, 21–24.)

Generally, federal habeas relief is not available on the grounds of prosecutorial misconduct unless the misconduct injected such unfairness into the trial as to render the conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (citation omitted). To meet this high bar, "improper remarks by a prosecutor must be 'so egregious that they fatally infect [ ] the proceedings and render[ ] [a defendant's] entire trial fundamentally unfair.'" *Id.* (citation omitted). A petitioner must demonstrate "'that absent the alleged impropriety the verdict probably would have been different.'" *Id.* (citation omitted). And with regard to statements made during a closing argument, habeas review is "exceptionally limited," and "relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

Here, Petitioner's claims of prosecutorial misconduct fail because this Court finds the court of appeals' application of the law to those claims reasonable. Turning first to Petitioner's claim that the prosecutor misstated the law during closing argument, the court of appeals observed that while assault-fear is a specific-intent crime, a prosecutor is still permitted to use circumstantial as well as direct evidence to prove specific intent. *Markham I*, 2017 WL 3974466, at *4. Here, the prosecutor set forth the correct definition of assault-fear, "intent to cause fear means an act done with an intent to cause fear of immediate bodily harm or death," and then argued that "the totality of the circumstances"

15

demonstrated that Petitioner had intended to cause O.H. to fear immediate bodily harm or death. *Id.* The court of appeals rightly concluded that "[t]he prosecutor's statements were not misconduct, and therefore there is no error." *Id.*

Second, Petitioner claims that the prosecutor committed misconduct by eliciting testimony that Petitioner was in custody. It is unclear when exactly Petitioner believes this occurred, but from his Petition and the record, it appears that he believes the testimony was elicited during the examination of Officer Ryan Olson. (*See, e.g.*, Habeas Pet. 21–22.) This Court has reviewed the trial transcript in this matter (*see* Addendum A-303–307), and agrees with the state court's determination that "at no point did the officer's responses to the prosecutor indicate or imply that appellant was in custody." *Markham I*, 2017 WL 3974466, at *6. It follows that the alleged misconduct did not occur.

Finally, Petitioner alleges that the prosecutor committed misconduct by allowing the responding officer and the electronic-crimes-taskforce officer to refresh their recollection with written reports during trial when those reports were not admitted into evidence. (Habeas Pet. 23–24.) This claim lacks merit. As the court of appeals rightly noted, Minn. R. Evid. 612 allows a testifying witness to refresh his or her recollection with written reports during trial.[1] *Markham I*, 2017 WL 3974466, at *6. It follows that the prosecutor did not commit misconduct.

---

[1]    A parallel rule exists at Fed. R. Evid. 612, Writing Used to Refresh a Witness.

For these reasons, this Court recommends that Petitioner's claim of prosecutorial misconduct (at grounds 2, 7, and 8) be denied.

### iv.   Petitioner's Ground 3: Sufficiency of the Evidence

Petitioner alleges that the evidence presented at trial was insufficient to convict him of First-Degree Burglary (assault-fear) because the State failed to prove that he intended to cause O.H. to fear that she was in danger of bodily harm or death. (Habeas. Pet. 14–15.) This Court will find that evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, a state-court decision rejecting a sufficiency challenge will not be overturned on federal habeas unless the decision was objectively unreasonable. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)). The Supreme Court has characterized this standard of review as "twice-deferential," *Parker*, 132 S.Ct at 2152, "because (1) under *Jackson*, the state court must be deferential to a jury's verdict when an insufficiency-of-the-evidence claim is reviewed on direct appeal, and (2) under AEDPA, a federal court must be deferential to the state court's resolution of an insufficiency-of-the-evidence claim in a § 2254 habeas corpus proceeding." *Heiges v. Roy*, No. CIV. 12-2874 JNE/TNL, 2014 WL 988460, at *9 (D. Minn. Mar. 13, 2014).

Having carefully reviewed the record in this matter, this Court finds that the court of appeals' conclusion that Petitioner's conviction was supported by the evidence was reasonable. The court of appeals laid out the circumstances proved at trial as follows:

> [A]ppellant and O.H.'s relationship ended earlier in the week of January 22, 2016; O.H. did not want appellant to come to her house on January 22; appellant came to O.H.'s house anyway, knocking on the front door and O.H.'s bedroom window; appellant broke open the front door and forced his way into the house when O.H. did not respond; O.H. heard the front door being broken and appellant shouting inside her house; a coffee table was displaced and clay pots were broken; O.H. became afraid when she saw the broken door; O.H. ran outside to drive away, but her vehicle's tire was flat; O.H. called 911; O.H. was in shock after the incident. The responding officer observed that O.H. had been crying; appellant sent O.H. threatening text messages and called multiple times while O.H. spoke with the officer. Finally, in a recorded call between appellant and O.H. on January 26, appellant told O.H. to tell the police that appellant was not at her house on January 22, O.H. was drinking heavily and broke her own door or did not know how it happened, and O.H. called appellant to fix the damage the next day.

*Markham I*, 2017 WL 3974466, at *3. The court of appeals concluded—and this Court agrees—that these "circumstances support a reasonable inference that [Petitioner] intended to cause O.H. to fear bodily harm or death." *Id.* That court also reasonably rejected Petitioner's alternative hypothesis that such circumstances are also consistent with an expression of Petitioner's frustration over his relationship with O.H.: "It is not a reasonable inference that appellant needed to travel to O.H.'s house knowing she was there, break the door, and damage other property to express his frustration." *Id.*

In sum, the court of appeals' conclusion that "there is no other rational hypothesis for appellant's actions other than appellant's intent to cause O.H. to fear bodily harm or death," was reasonable. Accordingly, this Court recommends that Petitioner's claim based on the alleged insufficiency of the evidence be denied.

### v.    Petitioner's Grounds 4, 10, 14, and 16: *Brady* Violations

Petitioner's grounds 4, 10, 14, and 16 each allege *Brady* violations that Petitioner believes violated his right to due process. Specifically, Petitioner alleges that the State (1) failed to disclose O.H.'s 911 call (ground 4) ; (2) failed to disclose evidence of O.H.'s crimes of dishonesty (ground 10); and (3) failed to disclose the arresting officer's original report (grounds 14 and 16). (Habeas Pet. 15, 27–28, 33–34, 36–37.)

In *Brady*, the Supreme Court held that prosecutors are constitutionally obliged to disclose exculpatory evidence to criminal defendants. To prevail on a *Brady* duty-to-disclose claim, a defendant must identify specific evidence that was available to the prosecution before his trial, but did not become known to him until after the trial. *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996). In addition, the defendant must demonstrate that the undisclosed evidence is "material," which means there is a "reasonable probability" that the outcome of the trial would have been different if the exculpatory evidence in question had been disclosed to the defense before or during the trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citation omitted). Therefore, there are three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

### a.  The 911 Call

The Court first addresses Petitioner's claim at ground 4 that the State withheld O.H.'s 911 call, which differed from her statement to police and trial testimony. (Habeas

Pet. 15.) The State conceded on direct appeal that the first two prongs of *Brady* were met—the 911 call was not disclosed due to the actions of the State—thus the only question that remained was whether the unavailability of the 911 call resulted in prejudice to Petitioner. *Markham I*, 2017 WL 3974466, at *5. Petitioner argues that the 911 call would have altered the outcome of the trial by enabling him to present an "alternate perpetrator" theory to the jury based on the fact that in the call, O.H. refers to her "ex-boyfriend," instead of just her "boyfriend." (Pet.'s Mem. in Supp. 11.) Moreover, Petitioner believes that the 911 call would have undermined O.H.'s testimony due to her inconsistent description of the injuries she allegedly suffered. (*Id.* at 12.)

This Court finds the court of appeals determination that no prejudice resulted from the non-disclosure of the 911 call reasonable. First, Petitioner's speculation concerning an alternate perpetrator due to O.H.'s use of the term "ex-boyfriend" instead of "boyfriend" is meritless. O.H.'s testimony at trial indicates that she had broken off her relationship with Petitioner in the week prior to the night the incident occurred. (Addendum A-243.) Her use of the term "ex-boyfriend" in the 911 call is thus unremarkable. As for the 911 call's impeachment value as it relates to O.H.'s testimony, the Court of Appeals rightly observed that her credibility was already attacked at trial by highlighting her inconsistent descriptions of the events of the night in question and the injuries she suffered. *Markham I*, 2017 WL 3974466, at *5. Accordingly, this Court finds that while the 911 call may have had impeachment value, its value was not so great that a

timely disclosure of the call would have resulted in a different verdict, and therefore recommends this claim be denied.[2]

### b. Records of O.H.'s Crimes of Dishonesty

Petitioner next alleges at ground 10 that the State violated his rights under *Brady* by failing to disclose records of O.H.'s prior convictions for crimes of dishonesty. (Habeas Pet. 27–28.) On direct appeal, the State contested the existence of such convictions, and Petitioner provided none. The court of appeals reasonably concluded that Petitioner's claim lacked merit at that time. *Markham I*, 2017 WL 3974466, at *7. Petitioner now appeals that court's judgment, but has still failed to provide any documentation of O.H.'s alleged criminal history. Accordingly, this Court recommends this claim be denied.

### c. The Arresting Officer's Original Report

Petitioner's final *Brady* claim is presented at grounds 14 and 16 of his Habeas Petition where he claims that he was denied access to the arresting officer's original police report in violation of his rights under *Brady*. (Habeas Pet. 33–34, 37.) The court of appeals, however, reasonably denied this claim because Petitioner had long been in possession of the report. Specifically, the court of appeals noted that Petitioner had cited a statement contained in the report in a pretrial pro-se motion filed on February 26, 2016: "Officer [ ] stated Mr. Markham was at home when he arrested me. But I see Officer [ ]

---

[2]     Petitioner also claims that the unavailability of the 911 call violated his Sixth Amendment right to confrontation. (Pet.'s Mem. in Supp. 23.) This argument, however, was never presented to the state courts, and is therefore procedurally defaulted.

forgot to mention when he arrested me at my house I was on my way to work." *Markham II*, 2019 WL 3293797, at *2. Moreover, the court of appeals observed that Petitioner's appellate counsel received a copy of the report as early as February 20, 2018, and that she had been provided it by Petitioner's trial counsel. *Id.* Beyond the assertions made in his filings, Petitioner has not provided any evidence to the contrary. Accordingly, this Court recommends this claim be denied.

### vi.    Petitioner's Grounds 5 and 9: The Jail Phone Call Recording

Petitioner claims at ground 5 that the admission of the recording of a phone call between himself and O.H. that was recorded while he was incarcerated violated his rights to due process because it constituted impermissible hearsay and violated his right to confrontation, and because it violated his rights by introducing improper character evidence.[3] (Habeas Pet. 16–18; 25–26.) The court of appeals, however, rightly rejected these claims. First, that court explained that the jail-call audio was not hearsay since the prosecution offered Petitioner's own statement against Petitioner, not the statements of O.H. *Markham I*, 2017 WL 3974466, at *5. In Minnesota, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(b). A statement is not hearsay if it "is offered against a party and is . . . the party's own statement." Minn.

---

[3]    In his brief, Petitioner relies on the Fourteenth Amendment to argue that the admission of the jail call was fundamentally unfair, a claim that he never presented to the state courts and which is therefore procedurally defaulted. (Pet.'s Mem. in Supp. 29.) While Petitioner's ground 5 is vague as to its legal authority, this Court construes it to invoke the Sixth Amendment, as that is the legal theory Petitioner presented regarding the jail call to the state courts on appeal.

R. Evid. 801(d)(2). This Court finds that because the state court correctly concluded that because the call was not hearsay, no confrontation issue could arise.

As to Petitioner's claim at ground 9 that the jail-call constituted improper character evidence, this Court observes that Petitioner does not allege a violation of federal law in relation to this claim, and were Petitioner to bring such a claim in the future, it would be procedurally defaulted. Petitioner also appears to imply that because his own statements in the call were offered against him, and because Petitioner never took the stand to testify, a confrontation clause violation occurred. (Habeas Pet. 26.) That argument lacks merit because, as explained above, the content of the call was not hearsay, and thus no confrontation issue could arise.

Accordingly, this Court recommends that Petitioner's claims related to the jail phone call be denied.

### vii.    Petitioner's Ground 6: Jury Instruction

Petitioner alleges that the trial court abused its discretion by instructing the jury on the elements of First-Degree Burglary and assault-fear. (Pet. 18–19.) Specifically, Petitioner objects to the failure to include the term "intent to" in the jury instruction. (*Id.* at 19.) This claim should be denied because, as the court of appeals correctly observed, Petitioner's objection derives wholly from his misunderstanding of Minnesota's burglary statute. *Markham I*, 2017 WL 3974466, at *6. That statute states that "[w]hoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree." Minn. Stat. § 609.582, subd. 1 (2014). That statute

23

contains two separate clauses separated by "or," one that requires intent to commit a crime, and the other requiring that a crime be committed.

Here, the trial court provided the following instruction to the jury: "Under Minnesota law whoever enters a building without the consent of the person in lawful possession and commits a crime while in the building, and the person assaults another within the building or on the building's appurtenant property, is guilty of a crime." *Markham I*, 2017 WL 3974466, at *6. Put simply, the court used the second clause from the statute, and omitted the first. Petitioner's theory that "intent to" should have been included does not comport with the statute; rather, it would erroneously require that the two separate clauses be read together as one.

Accordingly, this Court concludes that the court of appeals application of the law to this issue was reasonable and recommends that this claim be denied.

### viii.    Petitioner's Ground 11: Ineffective Assistance of Trial Counsel

Petitioner alleges that he was denied due process because his trial counsel failed to investigate O.H.'s criminal history. (Habeas Pet. 29.) To prevail on a claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for his counsel's errors, the result of his proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984) "The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (quotations omitted). "The second prong requires a showing that

24

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 753 (quotations omitted). Petitioner bears the burden of establishing both prongs. *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (objective-standard-of-reasonableness prong); *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005) (prejudice prong). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *United States v. Kehoe*, 712 F.3d 1251, 1253 (8th Cir. 2013) (quoting *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011)).

Here, Petitioner's ineffective-assistance-of-counsel claim fails because Petitioner has not carried his burden to show either that his trial counsel failed to investigate O.H.'s criminal history, or that such a failure would have prejudiced Petitioner. After careful review, this Court agrees with the court of appeals that there is no evidence in the record at all that trial counsel failed to look into O.H.'s criminal history, nor is there any evidence in the record that such a history exists and would have been helpful to Petitioner at trial. Accordingly, this Court recommends this claim be denied.

### ix.    Petitioner's Ground 13: Ineffective Assistance of Appellate Counsel

Petitioner also claims that his rights were violated due to ineffective assistance of appellate counsel. Specifically, Petitioner faults his appellate counsel for failing to argue that police lacked probable cause to arrest Petitioner, and failing to raise an ineffective-assistance-of-trial-counsel claim. (Habeas Pet. 31–32.) As a preliminary matter, this Court observes that appellate counsel's decision not to raise an ineffective-assistance-of-

25

trial-counsel argument was not presented to the postconviction court or the court of appeals, and is thus procedurally defaulted. That claim should therefore be denied.

As to Petitioner's remaining ineffective-assistance-of-appellate-counsel claim, as explained above, a reviewing court must recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Given this presumption, the right to effective assistance of counsel on direct appeal "does not require that appellate counsel raise every colorable or non-frivolous issue on appeal." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir.1998) (citation omitted). "Absent contrary evidence, [the court] assume[s] that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Id.* (citation and internal quotation marks omitted). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citation and internal quotation marks omitted). Therefore, the question is whether "the decision to omit an issue on appeal was unreasonable under the circumstances and was [a] decision that only an incompetent attorney would make." *Maksimov v. United States*, No. 4:03–CV–615, 2006 WL 2802206, at *18 (E.D. Mo. Sept. 25, 2006) (citations omitted).

Here, the court of appeals observed that Petitioner did file a pre-trial motion to dismiss the charge against him for lack of probable cause, but that motion was denied. *Markham II*, 2019 WL 3293797, at *3. (*See* Addendum A-1007.) The court of appeals then reasonably concluded that Petitioner has not satisfied his burden to show that

appellate counsel's decision not to raise the probable cause issue was anything other than sound appellate strategy because the record indicated it was a losing argument. In fact, in its separate discussion of whether probable cause for Petitioner's arrest existed, the court of appeals stated:

> Markham's arrest was supported by probable cause. The record shows that police officers went to Markham's residence, where he rented a room, and the homeowner invited them inside. After speaking with Markham, the officers arrested him based on eyewitness accounts, a 911 call, and physical evidence collected during the burglary investigation, all of which implicated Markham in the crime. This same information was then used to convict Markham beyond a reasonable doubt of first-degree burglary. We therefore conclude that probable cause existed to support Markham's arrest.

*Markham II*, 2019 WL 3293797, at *2.

This Court finds that the court of appeals' analysis of these issues was reasonable, and therefore recommends that Petitioner's ineffective-assistance-of-appellate-counsel claim be denied.

### x.    Petitioner's Ground 15: Probable Cause for Arrest

Petitioner argues that his arrest was illegal under the Fourth Amendment because authorities lacked a warrant or exigent circumstances sufficient to justify a warrantless arrest. (Habeas Pet. 35–36.) Petitioner's Fourth Amendment claim, however, is barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). There, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

"[A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994), *cert. denied*, 514 U.S. 1052 (1995); *see also Poole v. Wood*, 45 F.3d 246, 249 (8th Cir. 1995), *cert. denied*, 515 U.S. 1134 (1995). "[A] 'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Capellan v. Riley*, 975 F.2d 67, 72 (2d Cir. 1992)). The determination of whether there has been an "unconscionable breakdown" does not require a review of the state courts' fact-finding process, or a review of the state courts' application of Fourth Amendment law. *Willett*, 37 F.3d at 1272. Federal courts "are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id.* at 1273 (emphasis in the original). On federal habeas review, the "inquiry focuses on whether [the petitioner] received an opportunity for full and fair litigation of his claim, not on whether legal or factual error in fact occurred." *Chavez*, 497 F.3d at 802.

This Court finds that *Stone* is applicable here. The record shows that Petitioner had opportunities to present his Fourth Amendment claims in his state court proceedings. While Petitioner did not bring a pre-trial motion to suppress, the Minnesota Court of Appeals did review Petitioner's claims on the merits, and explained why they should be rejected. *Markham II*, 2019 WL 3293797, at *2. Furthermore, Petitioner had another

opportunity to present his Fourth Amendment claims in his petition for further review in the Minnesota Supreme Court. (*See* Addendum A-885.)

It is clear that Petitioner disagrees with the outcome of the state court proceedings in which his Fourth Amendment claims were addressed, but he cannot deny that those proceedings occurred, nor does he deny that they gave him an opportunity to litigate his current Fourth Amendment claims. Accordingly, because it is *Stone*-barred, this Court recommend Petitioner's probable cause for arrest claim be denied.

### C.    Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, this Court recommends that the Petition for Writ of Habeas Corpus be denied.

## III.    An Evidentiary Hearing is Not Merited

Petitioner moves the Court for an order granting an evidentiary hearing under 28 U.S.C. § 2254(e)(2). (Doc. No. 24, Mot. for Hr'g.) Petitioner believes such a hearing is necessary so that he may further litigate his claim that his warrantless arrest was unsupported by probable cause and violated his Fourth Amendment rights. (*See id.*) This motion should be denied.

The relevant statutory provision, 28 U.S.C. § 2254(e)(2) provides as follows:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In other words, § 2254(e)(2) "generally bars evidentiary hearings in federal habeas proceedings initiated by state prisoners," but it "includes an exception for prisoners who present new evidence of their innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013).

Here, Petitioner is not entitled to an evidentiary hearing because he has failed to meet the requirements of § 2254(e)(2). Specifically, Petitioner has not identified any new evidence that demonstrates Petitioner's actual innocence of the crime for which he was committed. Accordingly, this Court recommends that Petitioner's request for an evidentiary hearing be denied.

## IV.    Petitioner's Motion to Expedite, Compel Judgment, and for Release Pending the Court's Decision Should be Denied

Petitioner moves the Court for an order granting (1) expedited consideration of his Petition; (2) judgment pursuant to Fed. R. Civ. P. 12(c); and (3) release pending the decision of the Court. (Doc. No. 26 ("Mot. to Expedite").) This Court will address each request in turn.

First, Petitioner requests that the Court expedite consideration of his Petition. (Mot. to Expedite 2.) The Court has "great latitude in carrying out its case-management functions" *Crigler v. Robbins*, 26 F.3d 126, 1994 WL 203362, at *1 (8th Cir. 1994) (table

disposition) (citing *Jones v. Winnepesaukee Realty*, 990 F.2d 1 (1st Cir. 1993)); *see also*, Title 28 U.S.C. § 1657(a) ("Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown."). Construing Petitioner's motion liberally, he appears to argue that expedited review of his Petition is necessary because he is likely to prevail on the merits. (Mot. to Expedite 6.) As explained above, however, this Court finds that his Petition should be denied. Accordingly, this Court also finds that his request for expedited consideration of his Petition should also be denied.

Next, Petitioner asserts, without further argument, that the Court should "compel judgment" pursuant to Fed. R. Civ. P. 12(c). (Mot. to Expedite 1.) Rule 12(c) concerns motions for judgment on the pleadings, and this Court thus construes Petitioner's request for judgment pursuant to that rule as a motion for judgment on the pleadings. Rule 12 of the Rules Governing Section 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." While a Rule 12(c) motion is not the vehicle by which habeas petitions are ordinarily resolved in this District, the practice is not inherently inconsistent with the provisions of § 2254. *See, e.g.*, *Yildirim v. Demoura*, 280 F. Supp. 3d 206 (D. Mass. 2017) (granting respondent's motion for judgment on the pleadings in a habeas matter pursuant to Fed. R. Civ. P. 12(c)). As

31

explained above, however, Petitioner's claims lack merit. Accordingly, his motion for judgment on the pleadings pursuant to Rule 12(c) should be denied.

Finally, Petitioner seeks an order releasing him pending the Court's decision in this matter. (Mot. to Expedite 2–11.) Petitioner cites to a number of different statutes in support of this request, but the gravamen of his argument is that because he was wrongfully convicted and his sentence is therefore unlawful, the Court should order Petitioner released from custody pending its decision. But even if the authorities cited by Petitioner authorized this Court to recommend his release, it would still not do so. Again, this Court finds that the Petition should be denied. Accordingly, this Court also recommends that Petitioner's request for release pending the Court's decision be denied.

## V.     Certificate of Appealability

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is unlikely that any other court—

including the Eighth Circuit—would treat the Petition differently than it is being treated here. This Court therefore recommends that Petitioner not be issued a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) be **DENIED**;

2.    Petitioner's Motion Requesting an Evidentiary Hearing (Doc. No. 24) be **DENIED**;

3.    Petitioner's Motion to Expedite, Compel Judgment Pursuant to Fed. R. Civ. P. 12(c), and for Release Pending the Decision of This Court (Doc. No. 26) be **DENIED**; and

4.    A Certificate of Appealability not be issued.


Date: October 28, 2020                          *s/ Becky R. Thorson*
                                                BECKY R. THORSON
                                                United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within **14 days** after being served a copy" of the Report and Recommendation. A party may respond to those objections within **14 days** after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).